# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ERNESTO ORTIZ,

    Plaintiff,

        v.                                                    No. CIV 97-1701 BB/LFG

UNITED STATES BORDER PATROL,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 24). Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendant's motion should be GRANTED.

**Facts**

Plaintiff was involved in a single-vehicle accident in which his Bronco hit a patch of ice, skidded off the highway, and rolled onto its top. Plaintiff was trapped in the vehicle. Two Border Patrol agents driving on the same highway came upon the accident shortly after it occurred, and stopped to help. They were informed by other individuals that Plaintiff was still in the vehicle and needed an ambulance. After calling for the ambulance, one of the agents spoke with a New Mexico State Police officer, Sergeant Kiper, who had also arrived on the scene. Sergeant Kiper informed the agent that Plaintiff was suffocating in the Bronco, because the overturned vehicle was pressing down on Plaintiff and making it difficult for him to breathe. Sergeant Kiper asked the agents to help roll the Bronco onto its side, off its roof, so Plaintiff could be removed. The agents attached a chain to the Bronco and, using their Border Patrol vehicle, pulled the Bronco onto its side. According to

Plaintiff, he was thrown about the vehicle as a result, and suffered spinal injuries which have left his legs and lower body paralyzed. Plaintiff filed suit against Defendant under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 1346(b), claiming Defendant's employees negligently injured him. Defendant has filed the instant motion seeking dismissal of Plaintiff's case.

**Standard of Review**

Both parties submitted affidavits for the Court's consideration, and the Court has considered those affidavits. Therefore, Defendant's motion must be analyzed as a summary judgment motion rather than a Rule 12(b)(6) motion to dismiss. *See Lowe v. Town of Fairland, Oklahoma*, 143 F.3d 1378, 1381 (10th Cir. 1998). Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendant's motion in light of these standards. As discussed below, under the case law there are two possible analyses to apply to this case. The result is the same under either analysis.

2

**Primary Analysis**

Under the FTCA, the United States is liable for negligent acts of its employees if a "private person," in similar circumstances, would be liable to the claimant under the law of the place where the negligent act occurred. § 1346(b). There is no dispute in this case that New Mexico law applies. According to the Border Patrol, under New Mexico law a private individual performing the same acts as its agents would not be liable to Plaintiff. The basis for this assertion is New Mexico's "good Samaritan" statute, NMSA 1978, § 24-10-3. Under that statute, a person administering emergency care at the scene of an emergency, without remuneration or the expectation of remuneration, is not liable for any civil damages unless the person acts in a grossly negligent manner. The Border Patrol contends there is no evidence its agents were grossly negligent, and no evidence they acted in the expectation of receiving remuneration for their efforts. Therefore, argues the Border Patrol, it is entitled to assert the defense provided by the good Samaritan statute.

In response, Plaintiff essentially argues two points. First, Plaintiff argues that the Border Patrol agents were law enforcement officers on duty at the time they came upon the accident. For purposes of the good Samaritan statute, therefore, they should be treated as a state or local law enforcement officer would be, rather than a "normal" private individual. Relying on case law from jurisdictions outside New Mexico, Plaintiff contends law enforcement officers have a pre-existing duty to render aid at the scene of an emergency, receive remuneration (in the form of their salaries) for their actions, and are not entitled to assert the protection provided by the good Samaritan statute. *See, e.g., Praet v. Borough of Sayreville*, 527 A.2d 486, 488-89 (N.J.Super. 1987); *Lee v. State*, 490 P.2d 1206, 1209-10 (Alaska 1971). Plaintiff asks the Court to interpret New Mexico's statute in the

3

same manner.[1]  Plaintiff's other argument is a suggestion that the agents were indeed grossly negligent in their actions, and therefore even under the good Samaritan statute the Border Patrol can be held liable for those actions.

The application-of-the-good-Samaritan-statute issue can be distilled into one inquiry: by using the phrase "private person," did Congress mean a person not a federal employee, but in a similar position as the federal employee, in either the government or private sector?  Or did Congress mean a person who is not a government employee of any kind?  In other words, should the Border Patrol agents in this case be compared for FTCA purposes with state or local government employees having similar duties and responsibilities, or only with persons not employed by any government entity?  In the former situation, the defenses and immunities of the Border Patrol agents would be the same as those of state or local government employees in similar situations; in the latter, the agents would be able to take advantage only of those defenses available to an individual not acting as a government employee.

Simply by using the phrase "private person," Congress appears to have decided that federal employees are not to be compared to state or local government employees, but to non-public-sector individuals.  If that were not the intent of Congress, it would have been a simple matter to delete the phrase "if a private person" from the FTCA.  This would have left the FTCA imposing liability in accordance with the law of the place of occurrence in general, allowing comparison to government-employee liability as well as normal tort liability.  This common-sense interpretation of the FTCA is borne out by cases interpreting the statute.

---

[1] Due to the Court's disposition of this case, the Court need not predict whether New Mexico would adopt this pre-existing duty doctrine as an exception to the protection provided by the good Samaritan statute.

In *Indian Towing Co. v. United States*, 350 U.S. 61, 65 (1955), the Supreme Court was faced with a government argument to the effect that the FTCA must be read to exclude liability in the performance of activities that private persons do not perform. In rejecting that argument, the Court reasoned in part that the government's argument would impose liability in the same manner as if the federal government were a municipal corporation and not as if it were a private person, and held this was not a permissible interpretation of the FTCA. By emphasizing the contrast between municipal employees and private persons, the Court impliedly rejected the argument Plaintiff makes in this case, that a Border Patrol agent should be liable to the same extent as a state or local law enforcement officer.

The Tenth Circuit has also held that where defenses and immunities to tort liability are concerned, the federal government is to be compared to a non-public-sector entity rather than a state or local governmental body. *Ewell v. United States*, 776 F.2d 246, 248-49 (10th Cir. 1985). In *Ewell*, the defense in question was provided by Utah's recreational use statute, which eliminated a landowner's duty of care toward any person who enters the owner's premises, without charge by the owner, for recreational purposes. The plaintiff had been a passenger on a motorcycle being driven on federal land, was injured in an accident, and filed suit against the United States. She argued that the Utah recreational use statute should not apply to the United States, because the statute was not intended to apply to public landowners, as opposed to private owners. The Tenth Circuit held that it did not matter whether the statute applied to land controlled by state or local governments, because the FTCA makes the United States liable only to the extent a private person would be liable under similar circumstances. Since the Utah statute applied to private landowners, it was equally applicable to the United States. *Id.; see also DiMella v. Gray Lines of Boston, Inc.*, 836 F.2d 718, 720 (1st Cir.

5

1988) (Massachusetts recreational-use statute applies to United States even if it would not apply to state governmental instrumentalities).

It is true that in the context of activities peculiar to law enforcement, some courts have established exceptions to the principle that the proper comparison in FTCA cases is to private, non-government individuals. However, these cases only serve to illustrate that there is a significant difference under the FTCA between "private persons" and government employees, and that the primary inquiry is how a private person in similar circumstances would be treated under state law. The cases discussing the law-enforcement exception emphasize that resort is had to law applicable to state or local law-enforcement officers only where there is no private analogue for the activity in which the federal officer was engaged. *See, e.g., Hetzel v. United States*, 43 F.3d 1500, 1503-04 (D.C. Cir. 1995) (no private individual has authority to engage in high-speed chase of suspected felon; therefore, private-individual analogy must be abandoned and standards of care applicable to government employers under state law will control); *Aguilar v. United States*, 920 F.2d 1475, 1477 (9th Cir. 1990) (private individuals do not direct traffic on public highways; therefore, examination of liability of state and municipal entities under like circumstances is necessary); *Crider v. United States*, 885 F.2d 294, 296-97 (5th Cir. 1989) (private persons do not arrest or detain suspects; liability for failure to do so must be premised, if at all, on examination of liability imposed on state or municipal entities under state law); *Louie v. United States,* 776 F.2d 819, 825 (9th Cir. 1985) (same).[2]

---

[2]In a situation where there is no analogous private activity, courts have understandably struggled to reach logically consistent results. For example, in *Hetzel* and *Crider*, the D.C. and Fifth Circuits held that standards applicable to state or local law enforcement officers applied. Immunities provided to those officers by state or local law, however, did not apply. 43 F.3d at 1504-05; 885 F.2d at 296-97. Also, the Ninth Circuit in *Aguilar* held that a state statute limiting law enforcement officers' liability to $50,000 applied to the United States; in *Stuart v. United States*, 23 F.3d 1483, 1488 (9th Cir. 1994), however, the same Circuit held that a state statute completely immunizing law

In this case, on the other hand, the Border Patrol agents were not engaged in a function unique to law enforcement when they stopped to render aid at the accident scene. They were not chasing a suspect, or apprehending or failing to apprehend one. They did not act pursuant to any law enforcement authority they possessed. Instead, they were doing what any individual with a chain and a vehicle could have done – responding to a police officer's request to roll the Bronco off its top and onto its side. Thus, a private analogue for their actions is readily available, and there is no need to apply a *Hetzel*-type exception. The Border Patrol is therefore liable for its agents' actions only to the extent a private person, in the same circumstances, would be liable. Under New Mexico's good Samaritan statute, such a private person would be liable only for gross negligence, rather than ordinary negligence.

This brings the Court to Plaintiff's suggestion that the agents' actions were grossly negligent. Plaintiff relies on an affidavit submitted by an employee of the ambulance service that came to the accident scene. The employee avers that Plaintiff did not appear to be choking or having difficulty breathing, that extraction equipment was on the way to the scene to extract Plaintiff from the Bronco, and that while the agents were rolling the vehicle over the employee yelled at them to stop. This affidavit fails to establish a genuine issue of material fact as to whether the agents acted in a grossly negligent manner. The assertion that Plaintiff was not actually choking has no impact on whether the

---

enforcement officers for certain activities would not apply to the United States. It does not seem consistent to treat federal law enforcement officers as state officers would be treated for some purposes, but not for others. Be that as it may, the Court believes the cases in this area can be summed up as holding that a federal actor is to be treated, if at all possible, as a private actor would be under state law. Where no private analogue is available, however, courts will not simply hold that the United States is immune from liability. To avoid that result, they will analogize to state or local governmental entities, but without affording the United States the benefit of any immunities that might be available to those state or local entities.

agents thought he was choking; their belief was not based on personal observation but on what they were told by Officer Kiper. Furthermore, there is no indication the agents knew extraction equipment was on its way. Finally, there is nothing to indicate the agents heard the employee yell at them to stop, knew who he was, or had any reason to think his knowledge of the situation was superior to that of Officer Kiper. Indeed in such a situation few private citizens would ignore the requests of a state police officer. In sum, even viewing the evidence in the light most favorable to Plaintiff, the agents did no more than act on a request made by a state police officer, and on information given to them by that officer indicating it was necessary to immediately roll the truck off its top to save Plaintiff's life. If it is negligent at all, this does not rise to the level of gross negligence.

**Alternative Analysis**

In one case involving an FTCA claim and, at least partially, a good Samaritan statute, the Tenth Circuit did not engage in the above inquiry. That is, the Circuit did not review the specific actions taken by the federal employees and then attempt to decide whether the employees should be treated in the same manner as private, non-public-sector employees, or as state or local employees would be treated under the statute. Instead, the Tenth Circuit analyzed the issue of the employees' duties in general, decided the federal employees owed no duty at all to the plaintiffs, and rejected the plaintiffs' argument that the federal employees were not acting gratuitously (and therefore not entitled to the protection of the good Samaritan statute) because they had a pre-existing duty . *Flynn v. United States*, 902 F.2d 1524, 1528-30 (10th Cir. 1990).[3] However, even if the pre-existing duty

---

[3]The *Flynn* court did not discuss the question of categorization of federal employees as private persons or public law enforcement officers, for good-Samaritan-statute purposes. The Court therefore does not understand *Flynn* to reject that analysis, or to hold that the pre-existing duty inquiry is paramount any time a law enforcement officer acts, no matter what action the officer is taking. In other words, *Flynn* does not preclude the Court from examining the acts of a federal

8

analysis does apply to this case despite the fact a private analogue for the agents' conduct is readily available, the Border Patrol is still entitled to summary judgment on the state of the record before the Court.

In *Flynn*, the Tenth Circuit examined a case in which National Park Service ("NPS") employees stopped at the scene of an accident, located outside the national park boundaries, to render assistance. Stating that NPS rangers are not general law enforcement officers, the Tenth Circuit held they had no inherent duty to rescue, at least outside the boundaries of the park. Therefore, the NPS rangers should be treated as private individuals with respect to the duty-to-rescue issue. *Id.* As did the *Flynn* plaintiffs, Plaintiff in this case argues, with no evidentiary or legal support, that Border Patrol agents have a duty to rescue analogous to state or local law enforcement officers' duty. The Court disagrees.

Border Patrol agents are not general law enforcement officers. Instead, like the NPS rangers in *Flynn*, their authority and duties are circumscribed by statute and limited in scope. Their primary duties are to prevent illegal aliens from entering the country. 8 U.S.C.A. § 1357 (main volume and 1998 supplement). Border Patrol agents' powers to search and arrest are tightly controlled by statute and regulation, and are focused on their primary mission of interdiction of alien traffic into this country. *See, e.g., United States v. Santa Maria*, 15 F.3d 879, 881-82 (9th Cir. 1994) (suppressing evidence discovered by agents because they entered property looking for drugs, rather than aliens, in violation of the strict statutory limitations of § 1357). For example, Border Patrol agents have the power to arrest offenders violating the laws of the United States, but only if the agent is performing

---

employee, determining they are acts a private individual could perform, and therefore applying the good Samaritan statute to those acts.

9

duties relating to the enforcement of immigration laws at the time of the arrest and there is a likelihood the offender will escape before a warrant can be obtained. § 1357(a)(5).

Plaintiff has provided no authority or evidence indicating that Border Patrol agents have the same powers and authority, and corresponding duties, as general law enforcement officers. Given the statutory limitations on such agents' powers and the lack of any evidence to the contrary, the Court holds they are not general law enforcement officers and, with respect to the duty to rescue, are analogous to the NPS rangers in *Flynn*. Therefore, the Border Patrol agents stopping at the scene of Plaintiff's accident had no pre-existing duty to rescue Plaintiff, and were acting as private individuals when they agreed to lift the Bronco off its top and onto its side. For that reason, the New Mexico good Samaritan statute applies to the agents' actions. Furthermore, for the reasons discussed above, there is no factual issue in this case concerning gross negligence, and the Border Patrol is entitled to summary judgment.

**Conclusion**

There are two possible analyses in this case. Under the first, which focuses on the actual actions performed by the Border Patrol agents, a private analogue for their actions is readily available. Therefore, the agents' actions are treated as those of a private individual, and the good Samaritan statute applies to those actions. Under the second analysis, the focus is on the agents' general status as Border Patrol agents, and on the question of whether they had a pre-existing duty to rescue Plaintiff. As discussed above, Border Patrol agents are not general law enforcement officers and do not have a duty to rescue, making the good Samaritan statute applicable under this analysis as well. Therefore, summary judgment for the Border Patrol is appropriate in this case.

10

**ORDER**

Defendant's motion for summary judgment (Doc. 24) is hereby GRANTED, in accordance with the foregoing Memorandum Opinion.

DATED March 8th, 1999.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

**Attorneys**
For Plaintiff
Phil Blenden
Blenden Law Firm
P.O. Box 1446
Carlsbad, New Mexico 88221

For Defendant
Raymond Hamilton
United States Attorney's Office
P.O. Box 607
Albuquerque, New Mexico 87103